**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH**

Civil Action No. 07-cv-00643-TS

---

DAVID YOUNG,

    Plaintiff(s),

v.

KEVIN ROBSON;
DANIEL BERTCH;
BERTCH & BIRCH, P.C.;
GORDON DUVAL;
GREGORY HANSEN;
DUVAL, HANSEN, WITT & MORLEY, P.C.;
DUVAL, HAWS, MOODY & FREI, P.C.;
DUVAL, HAWS & FREI, P.C.; and
DUVAL, HAWS & MOODY, P.C.;

    Defendant(s).

---

### AFFIDAVIT OF DAVID YOUNG

---

David Young, being duly sworn, does state:

1. I declare under oath that I am over the age of twenty-one, competent to make this Affidavit and that every fact or allegation contained in this Affidavit is within my personal knowledge.

2. My ownership interest in the properties that were the subject of the state court litigation (the "Properties") were in Plats E, G and H of the Wade Springs Subdivision located in Pleasant Grove, Utah, not just Plat E. When the original property was subdivided, I had an interest in a total of 32 lots in the three Plats.

3.      I did not receive a copy of the letter attached as Exhibit 5 to the Duval Defendants' Motion at any time in 1981.  The first time I received a copy of this letter was from Wendell Hansen directly in 2004.

4.      In 2004, after being given a copy of the letter, I took the letter to Mr. Boyd Park to determine the veracity of the document.  I was informed that Mr. Park's firm had never represented A&H Investment or Wendell Hansen.

5.      I did not receive any notice prior to 2004 concerning Mr. Wendell Hansen's alleged "foreclosure" of the Properties related to Scott Construction's alleged breach of any contract.

6.      I dispute that a breach of contract occurred based upon Wendell Hansen's deposition in the underlying state court litigation that Scott Construction had paid him around $700,000 under the contract.  *See* Deposition Testimony attached as Exhibit A.  It is my understanding that those payments fully satisfied Scott Construction's obligations under the terms of the purchase agreement.  *See* Affidavit of Buck Scott attached as Exhibit B.

7.      In the course of preparing my case in the underlying state court litigation, I performed research to assist the attorneys in collecting documents.  As part of that research, I collected copies of Pleasant Grove building permits and building inspection reports regarding lots that were covered by my Notice of Interest.  In my records, I have a building permit for Lot 18, Plat E of the Wade Springs subdivision which is different from that attached to Mr. Swenson's Declaration.  *See* Exhibit C.  The building permit in my file is Building Permit No. 3984, which was received by Pleasant Grove on September 8, 1993, the footings were inspected on September 20, 1993, and the building permit was issued on November 23, 1993.  *Id.*  This

building permit is significantly different from the building permit Mr. Swenson attached to his Declaration with the number 3831. *See* copy of building permit attached as Exhibit D.

8. I also obtained bonding requirements for Plat H dated August 15, 1996. It required posting of a bond before construction could be started. *See* Exhibit E. I also obtained bond release forms for construction of infrastructure on Plat H dated September 9, 1996, June 27, 1997, August 22, 1997 and December 20, 2000. *See* Exhibit F. I provided these to the Duval Defendants. I expected infrastructure construction to take place as part of my contract with Scott Construction.

9. I also obtained a recommendation for approval of infrastructure construction on Plat E, dated May 7, 1993, indicating that construction had not started by that date and the requirements before any construction could commence. *See* Exhibit G. I provided this to the Duval Defendants.

10. I obtained bond release forms for construction of infrastructure on Plat G dated July 1, 1996, June 27, 1997, August 22, 1997 and June 10, 1998. *See* Exhibit H. I provided these to the Duval Defendants. I expected infrastructure construction to take place as part of my contract with Scott Construction.

11. I reviewed the building permits and Final Residential Project Cards for all of my lots and created the table below of the dates they were issued.

| **PLAT E** | | |
|---|---|---|
| LOT NO. | BUILDING PERMIT APPLICATION DATE | FINAL RESIDENTIAL PROJECT CARD/ CERTIFICATE OF OCCUPANCY |
| 12 | Unknown | 10/08/1993 |
| 13 | 10/1993 | 11/12/1993 |
| 14 | Unknown | 10/08/1993 |

| | | |
|---|---|---|
| 15 | 12/1994 | 06/02/1995 |
| 16 | 11/1993 | 12/22/1993 |
| 17 | 03/15/1994 | Unknown |
| 18 | 11/1993 | 02/23/1994 |
| 19 | 05/19/1993 | 08/01/1993 |

| PLAT G | | |
|---|---|---|
| LOT NO. | BUILDING PERMIT APPLICATION DATE | FINAL RESIDENTIAL PROJECT CARD/ CERTIFICATE OF OCCUPANCY |
| 6 | 01/17/96 | 1996 |
| 7 | 10/25/96 | 10/25/96 |
| 9 | 04/01/96 | 10/18/96 |
| 10 | 04/09/95 | 10/13/96 |
| 14 | 03/26/96 | 10/10/96 |
| 15 | 01/16/96 | 08/20/96 |
| 16 | 01/29/95 | 08/20/96 |

| PLAT H | | |
|---|---|---|
| LOT NO. | BUILDING PERMIT APPLICATION DATE | FINAL RESIDENTIAL PROJECT CARD/ CERTIFICATE OF OCCUPANCY |
| 1 | 10/23/96 | 05/1997 |
| 2 | 06/17/99 | 06/17/99 |
| 3 | 11/22/99 | 06/07/02 |
| 4 | 10/04/96 | 1997 |
| 5 | 10/1999 | 05/19/00 |
| 6 | 10/29/96 | 05/29/97 |
| 7 | 09/13/96 | 03/28/97 |
| 8 | 11/11/96 | 08/14/97 |
| 9 | Vacant 2004 | |
| 10 | 06/28/00 | 04/26/01 |
| 11 | 03/28/00 | 07/28/00 |
| 12 | 07/05/00 | 04/26/01 |
| 13 | 09/04/97 | 02/27/98 |
| 14 | 10/04/01 | 04/01/02 |

4

12. I reviewed the Heslop photos and determined that there were no concrete poured sidewalks or completed road surface on July 25, 1993. The photos further indicate that there was no development on the surrounding lots.

13. In the first few days of the month of August in 2000, I retained the services of Robson & Bertch to protect my interests in the properties. I know these dates to be accurate because on July 31, 2000, I had already spoken with Mr. Daniel Bertch concerning the litigation over my interests in certain real property. On July 31, 2000, I faxed Mr. Bertch a list of the mortgage holders and property owners and requested that he review the same for possible conflicts of interest before retaining his firm. *See* Exhibit I.

14. I recall receiving on August 3, 2000, a facsimile from Mr. Robert C. Fillerup, the attorney who assisted me with filing my notice of interest in real property. *See* Exhibit J. I recall taking the documents and meeting with Mr. Bertch between August 3 and August 6, 2000, and retaining his firm to represent my interests. When I retained the services of Robson & Bertch within the first few days of August 2000, I informed them of the necessity to file a complaint immediately to avoid the adverse consequences of the Utah Adverse Possession statute.

15. On February 27, 2001, I retained the services of Gordon Duval and his firm to represent my interest in relation to the Properties in question. I met with them on February 27, 2001, and provided them with a copy of the Complaint that I believed the Bertch firm had filed on my behalf. *See* Exhibit K. I signed a more formal retention Agreement on March 26, 2001. *See* Exhibit L. I did not retain their firm specifically to bring an "adverse possession" claim, but

rather to use whatever means and claims they deemed necessary to protect my interest in the Properties.

16. Mr. Duval told me that I had an excellent case and the 1982 Affidavit from A&H did nothing to affect my previously filed Notice of Interest in real property. The Duval Defendants told me that the case would take less than three months to settle.

17. A factual dispute exists concerning the document attached as Exhibit 8 to the Duval Defendants' Motion. It was my understanding that I never terminated Mr. Duval's representation, but rather agreed that he would withdraw as trial counsel and continue to work on the case to assist Mr. Quesenberry in order to move the case forward and ultimately to settle the matter.

18. I believed that the fee agreement, including the "release", was contingent upon the Duval Defendants' cooperation with Mr. Quesenberry so that he could reasonably assist them in prosecuting my case. I also believed the sole purpose of the release was to release Mr. Duval from any claims arising out of work performed by Mr. Quesenberry. I subsequently sent Mr. Duval a letter unsuccessfully attempting to clarify that fact. *See* Exhibit M.

19. Further, I was never advised that I should consult with independent counsel before signing the release and Mr. Quesenberry was not acting as my counsel in that regard.

20. Mr. Duval had abandoned my state court action for months and even sometimes years, which prompted me to retain the services of Mr. Quesenberry to assist him to move the matter forward. Mr. Duval did not file a complaint until fourteen months after I retained him.

21. Immediately after Exhibit 8 was signed, Mr. Duval refused to cooperate with Mr. Quesenberry and therefore the new fee agreement was terminated, Mr. Quesenberry withdrew,

6

and I began working again exclusively with Mr. Duval to attempt to resolve the outstanding litigation. I accordingly signed a new fee agreement with the Duval Defendants that reverted to the terms of my original fee agreement with them. As with the first, the new fee agreement contained no "release." Mr. Quesenberry never performed any substantive work on the case which is the subject of the current litigation.

22. I provided the Duval Defendants with the identities of all witnesses to my Notice of Interest transaction. I also located and provided him copies of all filed and unfiled contracts.

23. I paid for a compete title search by Title West and provided the results to the Duval Defendants, along with copies of all documents found by the search and all property tax records for the Properties.

24. I retained two expert title attorneys who would testify that my Notice of Interest was valid and outstanding.

25. I found all the witnesses to the original sale of the Properties to Scott Construction and the Duvall Defendants obtained their affidavits and/or depositions. These include Messrs. Scott, Cannon, McKean and Hansen of A&H Investment.

26. The title company and all of the witnesses except Mr. Hansen confirmed that A&H did not foreclose on the property. However, Mr. Hansen testified that he received in excess of $700,000, from Scott Construction and Mr. Scott testified that was payment in full under his contract. *See* Exhibits A and B.

27. Mr. Scott testified that he had to own the land before the bank would make a development loan, so he paid for the Properties in full. *See* Exhibit B.

28. The Duval Defendants told me that the state court judge did not grant pretrial motions and they chose not to reveal to the court all the facts of which they were aware. Mr. Hansen told me that he knew this from lectures the judge had given to Mr. Hansen's law school class.

29. They did not make use of the evidence and witness statements to respond to the motion for summary judgment.

30. Defendant Greg Hansen worked closely with Defendant Gordon Duval in developing the strategy for and response to the motion for summary judgment.

31. When the court granted the motion for summary judgment, the Duval Defendants filed a "Memorandum in Support of Motion to Amend Order" raising factual issues not raised in their original response to the motion, even though they were in possession of the information at the time of their original response. A copy of the Memorandum is attached as Exhibit N. The court denied the motion, finding that Plaintiff had failed to controvert facts in a timely manner. A copy of the order is attached as Exhibit O. I therefore lost my ownership interest in the Properties.

32. Then I learned that Empire Title did not record the property transfer from A&H Investment to McKean as required by the contract between those parties, which property included the property in my Notice of Interest. However when Scott Construction, McKean's assignee, sold other property subject to the contract to Savage Brothers, Empire Title did provide a deed for that sale, but would not in Plaintiff's case.

FURTHER, AFFIANT SAYETH NAUGHT.

_____
David Young

STATE OF ~~COLORADO~~ Montana )
                              )ss.
COUNTY OF Ravalli )

SUBSCRIBED AND SWORN TO before me this 26 day of June, 2009, by David Young.

Witness my hand and official seal.

My commission expires: April 30, 2012

_____
Notary Public

GINA NEAVES
NOTARY PUBLIC - MONTANA
Residing at Hamilton, Montana
My Comm. Expires April 30, 2012

9

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June, 2009, I electronically filed the foregoing with the Clerk using the CM/ECF system which will send notification of such filing to the following:

Laramie D. Merritt, Esq.
Hansen Wright Eddy & Haws PC
233 S. Pleasant Grove Blvd., Suite 202
Pleasant Grove, UT  84062
*Counsel for Defendants Gordon Duval, Greg Hansen, Duval, Hansen, Witt & Morley, P.C., Duval Haws & Moody, P.C., Duval Haws & Frei, P.C., Duval Haws Moody & Frei, P.C.*

Nicole Myers, Esq.
Duval & Moody PC
947 South 500 East, Suite 200
American Fork, UT  84003
*Co-counsel for Defendants Gordon Duval, Greg Hansen, Duval Haws & Moody, P.C., Duval Haws & Frei, P.C., Duval Haws Moody & Frei, P.C.*

Stewart O. Peay, Esq.
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
*Counsel for Defendants Daniel Bertch, Kevin Robson, Bertch & Birch*

       s/   Jeffery D. Bursell
        Jeffery D. Bursell
        GODFREY & LAPUYADE, P.C.
        *bursell@godlap.com*

        Aaron D. Randall
        Hughes, Thompson Randall & Mellen, P.C.
        *aaron@htrmlaw.com*

        *Attorneys for Plaintiff*