

FILED IN
4TH DISTRICT COURT
STATE OF UTAH
UTAH COUNTY

2005 MAY 27  P 4:16

GREGORY G. HANSEN, Bar No. 10057
DUVAL HAWS MOODY & FREI, P.C.
947 South 500 East, Suite 200
American Fork, Utah 84003
Telephone: (801) 763-0155
Facsimile: (801) 763-8379

Attorney for Plaintiff

## IN THE FOURTH JUDICIAL DISTRICT COURT IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| DAVID W. YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>ALL AMERICAN DEVELOPMENT & CONSTRUCTION, L.C., et al.<br><br>Defendants. | MEMORANDUM IN SUPPORT OF MOTION TO AMEND ORDER<br>Civil No. 020402269 PR<br><br>Judge: Fred D. Howard |

Plaintiff, David W. Young, has requested, pursuant to rule 59(e), that the court amend its May 17th order. The court granted summary judgment in favor of Defendants. However, this case presents several factual and legal issues which, if taken into account properly, preclude summary judgment.

### I.  THE COURT IMPROPERLY MADE FINDINGS OF FACT CONCERNING SEVERAL DISPUTED MATERIAL FACTS.

Summary judgment is proper only when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah Rules of Civil Procedure 56(c). Further, summary judgment is proper only when it clearly appears that the

1



party against whom the judgment would be granted cannot possibly establish a right to recover should summary judgment be granted, and any doubts should be resolved in favor of the nonomoving part. *Reliable Furniture Co. v. Fidelity & Guarantee Insurance Underwriters*, 16 Utah 2d 211 (1965).

A.    **When a Person Should Reasonably Know that He Has Suffered a**
**Legal Injury is A Question of Fact.**

The court held at the hearing that Defendant All American's development of the land in question, beginning in January of 1995, would alert a reasonable person of an open, notorious, and hostile possession of the land occurring adverse to Plaintiff's rights. However, "the point at which a person reasonably should know that he or she has suffered a legal injury . . . is a question of fact." *Spears v. Warr*, 44 P.3d 742, 753 (Utah 2002)( Reversed on other grounds)(citing *Sevy v. Sec. Title Co. of S. Utah*, 902 P.2d 629, 634 (Utah 1995), and *Andreini v. Hultgren*, 860 P.2d 916, 919 (Utah 1993). Similarly, the court in *Bank One Utah v. West Jordan City*, 54 P. 13d 135, 137-38 (UT Ct.App. 2002), held that a party "cannot have a legitimate claim against [another party] until it is aware that the [other party's] action or inaction has resulted in some kind of harm to its interests. Finally, a "statute of limitations begins to run upon the occurrence of the last event required to form the elements of the cause of action. *Williams v. Howard*, 970 P.2d 1282, 1284 (Utah 1998).

Plaintiff presented evidence at the hearing which disputed Defendants' assertions that Plaintiff should have been aware of All American's use and possession of his land prior to May 21, 1995. Pursuant to an Earnest Money Receipt and Exchange Agreement between Plaintiff and

2

Scott Construction, Plaintiff had several expectations regarding the development of the land. (See Agreement, attached as Exhibit 1.) According to that agreement, Plaintiff expected that 1) Scott Construction would furnish a final but unrecorded plat, 2) Pleasant Grove City would install a water line to 1100 North, and 3) all water and sewer lines would be stubbed to the property before Plaintiff's obligations would accrue.

Defendants presented evidence that All American began working on Plats G and H beginning in January of 1995, which consisted of receipts from an excavation company, and Mr. Heiner's deposition testimony of his recollection of the development. Although Plaintiff did not present any evidence to dispute the fact that All American *began* working on the land in January of 1995, Plaintiff clearly disputed the allegation that the work performed between January and May 21 of 1995 would, or should, constitute notice of *hostile* possession of the Plaintiff's interest in the land.

The receipts for excavation work performed by E.S.P. and Steve Phalon provided by Defendants clearly show that the work performed between January and May of 1995 was primarily located only on Plat G, and consisted mainly of installation of sewer and water lines to the lots which Plaintiff would have been expecting to occur. (See E.S.P. Invoices attached as Exhibit 2.) For instance, job invoice 5233 states that on January 27, 1995, E.S.P. spent 1.5 hours with a track-hoe locating "sewer, water, and storm drain" for Plats G and H. Job invoice 5276 shows that on February 20, 1995, E.S.P. spent three hours with a loader on Plat G only doing work described as "knock down poles for staking." Invoice 5356 states that by March 1, 1995 E.S.P. had installed sewer and water mains on Plat G only. Invoice 5283 states that also by

3

March 1, 1995, E.S.P. had provided "road dirt work" on Plat G only. Finally, invoice 5473 states that on May 2, 1995, E.S.P. "dig out drain and basin that church filled in" without stating where this work was performed. All the other invoices provided by All American regarding excavation or other work are dated after May 21, 1995.

Nearly all the work performed by All American via E.S.P would be the type of work Plaintiff would be expecting some construction company to perform under his Agreement (Exhibit 1). Further, according to the Affidavit of Eric Maynes, an excavator and developer, Plaintiff would expect extremely similar work and equipment on his land if he were waiting for water and sewer lines to be stubbed to his property. (Exhibit 3.) Eric Maynes states that "In order to stub water and sewer lines to a piece of property, an excavation company would use heavy excavation equipment such as a track-hoe, loader, and a gravel box containing bedding material, and would normally excavate approximately 50 to 100 feet inside the border (of) the property to install the stubs." The affidavit also states that, where the surrounding land was being developed, excavation and paving companies would likely use vacant adjacent land as a turn around point for heavy equipment and vehicles, and would normally store equipment and machinery on that vacant land.

Plaintiff has stated that he expected any work on or around his land to be done under the direction of Scott Construction, that he was never notified of any default or foreclosure action, and he was told by Buck Scott of Scott Construction that there was never any default or foreclosure on that piece of land. (See Affidavit of David Young, Exhibit 4). Plaintiff's claims clearly dispute All American's claims that Plaintiff should have known that their development of

4

**Exhibit N**

the land, prior to May 21, 1995, was hostile to his interest.

Thus, if Plaintiff was out observing his land between January 1 and May 21 of 1995, and was watching excavation work being performed which was substantially similar to that work he was expecting Scott Construction to perform or direct, Plaintiff would have reason to believe only that he might be obligated soon to fulfill his end of the agreement to begin developing the land. The main question presented here is: at what date would Plaintiff become legally responsible to realize that some other entity than Scott Construction or its subcontractors was developing his land? As stated above, "the point at which a person reasonably should know that he or she has suffered a legal injury . . . is a question of fact." *Spears v. Warr*, 44 P.3d 742, 753 (Utah 2002). Another, similarly important question presented to the court is: what event is the last event required to form the elements of the cause of action for adverse possession, thus beginning the seven year statute of limitations? Again, this is a questions of material fact which precludes summary judgment.

However, the court held that Plaintiff should have been aware since January of 1995 that All American and not Scott Construction was developing the land in question and was exercising possession hostile to Plaintiff's interest. Plaintiff submits that such findings of fact regarding material facts were in dispute between the parties, and should not have been made by the court. Therefore, the court should amend its decision granting summary judgment in favor of Defendants, and deny Defendants' motions, thereby preserving such disputes of material fact for trial.

5

B.    Plats G and H Must Be Considered Separately for Purposes of

Adverse Possession.

Section 78-12-8 of the Utah Code Annotated Code states as follows:

> Whenever it appears that the occupant, or those under whom he claims, entered into possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property under such claim, for seven years, the property so included is deemed to have been held adversely, *except that when the property so included consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract.*

(Emphasis added)

All American alleged that Plaintiff's claims are barred because of All American's

presence on the land covering Plaintiff's notice of interest beginning in January of 1995.

However, as shown above, nearly all the work performed by All American was done on Plat G,

leaving Plat H relatively untouched until well after May 31, 1995. The only evidence the

Defendants presented of All American's work on Plat H was Job invoice 5233 showing E.S.P.'s

using a track-hoe for 1.5 hours locating "sewer, water, and storm drain" for Plats G and H on

January 27, 1995. (See Exhibit 2.) This type of work would not only be relatively benign to Plat

H, but would also be precisely the type of work Plaintiff expected Scott Construction to have

performed under their Agreement. (Exhibit 1.)

However, the court ruled that Plaintiff was precluded in his claims for both Plats G and H

based on All American's presentation of job invoices showing that most of the work prior to

May 31, 1995 was performed on Plat G alone. Not only does Plaintiff dispute Defendants'

6

**Exhibit N**

allegations that the type of work performed on Plat G would or should have given him notice of adverse possession under his expectations regarding the development of the land, Plaintiff disputes All American's claims that any work it performed would constitute an open, notorious, and hostile possession of Plat H prior to May 31, 1995. In fact, Defendants have not shown that All American performed any work on Plat H prior to May 31, 1995, except for locating sewer, water, and storm drains for both Plats G and H for 1.5 hours.

Pursuant to § 78-12-8, All American's possession of one lot is not deemed possession of any other lot, or Plat, in the subdivision. Therefore, even if, *arguendo*, All American had done work which constituted notice to Plaintiff of adverse possession of Plat G, that activity could not be applied to Plat H as well. Plaintiff submits that the court erroneously applied a broad brush in regards to the Defendants' allegations concerning All American's presence and development of Plaintiff's land and wrongfully entered summary judgment concerning both Plats G and H. Further, as stated above, the issue of whether All American's presence or development of Plats G and H would, or should, give notice to Plaintiff of any adverse possession claims, is a question of fact which precludes summary judgment. Therefore, the court should amend its decision to consider the evidence and factual disputes concerning Plats G and H separately. Under such a consideration, the court should deny Defendants' motions for summary judgment.

C.    **The Court Made Wrongful Findings of Fact Regarding All American's Activities on Plats G and H Prior to May 21, 1995, and the Notice Those Activities Provided to Plaintiff.**

The court held that All American's activities beginning in January of 1995 and consisting

7

of the cutting of roads, and installating of curb, gutter, power, and things other than water and sewer would alert a reasonable person of open, notorious, and hostile possession of the land. The court also held that for purposes of adverse possession, it is not a question as to when improvements were completed, but when they were begun. However, as shown above, nearly all of All American's activities on the land were isolated to Plat G, and consisted mainly of subsurface sewer and water line installation which would not have given Plaintiff notice of adverse and hostile use. (See Exhibits 2 and 3).

Also, Pleasant Grove Bond Release Forms regarding the Wade Springs Subdivision, Plat G, show that as late as October 15, 1995, All American had only completed 45% of the road work and only 50% of the curb, gutter and sidewalk. (Exhibit 5.) The invoices provided by All American show that on March 1, 1995 E.S.P. had installed sewer on Plat G and performed "road dirt work" on Plat G. (Exhibit 2.) There has been no evidence presented to the court to show exactly what other work was begun on Plat G between March 1 and October 15 of 1995. The Pleasant Grove Bond Release forms show that streets on Plat G were finished by January 22, 1996, and that curb, gutter, and sidewalk were completed by June 10, 1998. (Exhibit 5.) Further, the Memorandum from Kent J. Fugal, Pleasant Grove City Engineer shows that as late as August 15, 1996, All American still had not posted a bond to go ahead with the improvements planned for Plat H. (Exhibit 6).

All American has presented virtually no evidence for Plat G regarding the dates of when road construction began, when curb, gutter, and sidewalk construction began, or when the installation of utilities other than sewer and water began. Moreover, All American has presented

8

no evidence that any actual construction began on Plat H prior to May 31, 1995. The determination of these unknown facts concerning Plat G would be essential to the court's finding that All American's activities prior to May 31, 1995 consisted of the cutting of roads, and installing curb, gutter, power, and things other than sewer and water, and also the finding that All American's activities notified Plaintiff of an adverse and hostile use. Since no such evidence was presented to the court, the court should not have made such a finding. Further, Plaintiff's assertion that All American's activities did not constitute notice to him of any adverse or hostile use creates a question of fact which would prohibit summary judgment. Therefore, the court should amend its decision on Defendants' motion for summary judgment, and deny Defendants' motions.

II.    THE COURT ERRONEOUSLY APPLIED THE SIX YEAR STATUTE OF LIMITATIONS.

In addition to the findings regarding adverse possession, the court made a finding that Plaintiff was barred by the six year statute of limitations, holding that Plaintiff's claims for quiet title exalted form over substance, and that Plaintiff's claims were limited to claims against Scott Construction for breach of contract, fraud, and the like. However, Plaintiff submits that the court's application of the six year statute of limitations was wrongful in several regards.

A.    The Court's Application of the Six Year Statute of Limitations Violates the "Law of the Case" Doctrine.

The "law of the case" is a legal doctrine under which a decision made on an issue during one stage of a case is binding in successive stages of the same litigation. (Citations omitted). The doctrine was developed in the interest of economy and efficiency to avoid

9

the delays and difficulties involved in repetitious contentions and reconsideration of rulings on matters previously decided in the same case. (Citations omitted), *Thurston v. Box Elder County,* 892 P.2d 1034, 1037 (Utah, 1995).

In this case, on January 20, 2004, the court issued a Ruling on Defendants' Motion For Summary Judgment and Plaintiff's Cross Motion for Summary Judgment. (Exhibit 7). In that previous ruling, Judge Laycock cited to and applied the Utah adverse possession statutes, and held that Plaintiff was barred by the seven year statute of limitations in regards to his claims against numerous Defendants. The Judge Laycock granted summary judgment for all Defendants except those connected with Plats G and H. (See Exhibit 7, especially the discussion portion of the Ruling beginning on p. 10.)

Here, during this recent phase of Defendants' motions for summary judgment, a new judge applied the six year statute of limitations to Plaintiff's claims, ruling that Plaintiff's claims were founded in contract only and that Plaintiff had obtained no title to the property. However, that ruling was in clear violation of the "law of the case" doctrine. Judge Laycock previously held, in a well reasoned, 20-page decision, that the law of adverse possession, along with its seven year time limit, applies to Plaintiff's claims in this case, and not the six year statute of limitation.

Further, Judge Laycock held that all homeowners, and his or her claim to the property, would be treated separately under U.C.A. §78-12-9 (cited and discussed above). (Exhibit 7, pp. 10-11.) Judge Laycock also held that "Possession by a person other than the owner ocurs when the 'true owner's right of possession has been so invaded as to give rise to a cause of action' and this possession serves to 'give notice to the owner' that his ownership is in question." (Exhibit 7,

10

p 12, citation omitted.) Finally, Judge Laycock held that "As to the seven year requirement, the seven-year period begins to run as soon as the claimant possess the land in a manner that invades the owner's true rights." (Exhibit 7, p. 11). "In other words, each homeowner must show adverse possession dating back at least to May 31, 1995 – seven years before the plaintiff filed this action." (Exhibit 7, pp. 11-12). Judge Laycock then went through each homeowner and lot individually and made findings as to the date when each lot was possessed by each homeowner, whether that possession was open, adverse, and under color of title, for a period of seven years, and whether the taxes had been paid.

However, in the more recent decision, the court did not evaluate Plats G and H as to their individual lots, or the possession of each individual lot within those plats. The court instead focused on All American's claims of possession of the plats in their entirety, and focused on allegations of work performed on only portions of the Plats (See Exhibit 2), without regard to the fact that Plats G and H were to be divided into smaller lots, and must be considered as such in evaluation of adverse possession. The court issued a broad, sweeping ruling regarding All American's activity on Plats G and H in their entirety.

The court's recent is in direct contravention of the "law of the case" doctrine. The law that is applied to a particular set of facts should not change with each rotation of the judge in that division. Therefore, the court should amend its ruling and make a finding consistent with the previous ruling and law of the case that the seven year statute of limitations under Utah adverse possession statutes applies to this case.

11

**Exhibit N**

B.   Plaintiff Obtained Equitable Title From Scott Construction and Possessed an Actual Interest in the Land.

This court held recently that Plaintiff's claims were "limited to contract, fraud, and the like" because Scott Construction never had title and could not pass equitable title to Plaintiff. The court relied on *Canefax v. Clement*, 768 P.2d 1377 (Utah Ct.App. 1990), and stated that if Scott Construction had obtained title, the court would have held differently. However, the court's decision is contrary to clearly established case law in both Utah and other jurisdictions concerning the transferability of equitable title. Scott Construction held an equitable interest in the property which he transferred to Plaintiff under the Agreement (Exhibit 1). An equitable interest is a real ownership interest in property, and an individual possessing equitable title in property may sell, mortgage, or otherwise transfer that equitable title to another individual, the same as other estates in real property. See *In re Mason*, 198 B.R. 932, 937-38 (Bkrtcy.N.D. Iowa, 1995), citing *Knapp v. Baldwin*, 238 N.W. at 544 (Legal and equitable estates in Iowa are alienable generally); *First National Bank of Sioux Rapids v. Torkelson*, 209 Iowa 659, 228 N.W. 655, 657 (1930) (legal and equitable interests in property may be sold or alienated; beneficial interest may be mortgaged same as other estates); *Durband v. Ney*, 196 Iowa 574, 191 N.W. 385, 388 (1923) (holder of equitable estate in land may contract for its sale); *Clinton House Motel, Inc. v. First National Bank of Clinton*, 316 N.W.2d 417, 419-20 (Iowa App.1981) (trial court held land company had mortgageable interest because of equitable conversion; appellate court affirmed on alternate ground without finding whether company held equitable title).

In *Hall v. Fitzgerald*, 671 P.2d 224 (Utah,1983), the Utah Supreme Court held that the

12

vendors of a piece of property fulfilled their contractual responsibility to convey *title* to the purchasers by delivering a warranty deed to the purchasers, even though vendors were themselves purchasing property under a real estate contract and therefore never possessed legal title. In that case, the plaintiff acquired his interest in 1,840 acres of undeveloped land in Cedar Valley under a real estate contract with a third party. *Id.,* at 226  The plaintiff then sold their interest in the land to the defendant under a second real estate contract. *Id.*  The defendant defaulted on his payments, and plaintiff began a foreclosure action against defendant. *Id.*  The defendant claimed that plaintiff was not able to pass title to the purchaser as a prerequisite to foreclosure because the plaintiff still owed money to the original third party vendor who still held legal title to the property under the first real estate contract. *Id.*  The trial court entered summary judgment against the defendant purchaser, and the defendant appealed. *Id.*

The Supreme Court stated:

> In real estate transactions, "title" most often refers to an estate in fee simple, clear of all encumbrances or interests of any other person. (Citations omitted). However, a contract "by its terms, or the circumstances leading up to and surrounding [a] transaction" may show that the parties intended another meaning. (Citations omitted) Under such circumstances, "title" can refer to a wide array of estates or interests, including legal title, equitable title, or a mere right of possession. (Citations omitted) Thus, an applicant for fire insurance who stated that "title" was in her name when in fact she was only purchasing the property on a real estate contract was not barred from coverage on the basis of false statement: In common parlance, the term [title] is used to express ownership, regardless of any technical legal import, and an absolute equitable ownership fills the measure of common understanding quite as fully as legal ownership.

> In a uniform real estate contract--the usage of "title" at issue in this case--the vendor usually retains legal title and passes equitable title to the purchaser. (Citations omitted) Consequently, the "title" required to be passed in paragraph 16C was not the usual unencumbered fee simple estate with participation by no other person, because the vendors would have no such title to give, having passed equitable title to the purchasers

13

when the contract was signed. In that circumstance, "title" would refer at most to the legal title retained by the vendor. However, in this case vendors have never possessed legal title since they were purchasing the property under a real estate contract.

*Id.,* at 227

The Supreme Court held, "Under the circumstances of this case, we hold that vendors fulfilled their contractual responsibility under paragraph 16C by delivering a warranty deed to the subject property." *Id.,* at 228. The Court held further:

> What is essential is that the vendor has conveyed all of his ownership in the property, so the purchaser and his successors, including those who take at the foreclosure sale, have the conventional clearance and warranties from that source. The use of the warranty deed in this case not only assured conveyance of all of the vendors' current interest, but would also automatically transfer to the grantees or their successors any "legal estate subsequently acquired." Such is the specific effect of our statute, U.C.A., 1953, § 57-1-10.[1] *Id.*

Thus, the Supreme Court held that the plaintiff, possessing equitable title to the property under a real estate contract, transferred that equitable title to the defendant under a second real estate contract, and was thus able to foreclose defendants equitable interest upon default. Moreover, as the court stated, such is the specific intent of Utah Code Annotated, § 57-1-10. (See footnote 1).

In this case, Richard McKean purchased the land in question under contract from A&H

---

[1] **Utah Code Annotated, § 57-1-10.** After-acquired title passes.

If any person shall hereafter convey any real estate by conveyance purporting to convey the same in fee simple absolute, and shall not at the time of such conveyance have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, his heirs, successors or assigns, and such conveyance shall be as valid as if such legal estate had been in the grantor at the time of the conveyance.

14

**Exhibit N**

Investment and obtained equitable title to the land. Scott Construction assumed that contract, likewise obtaining equitable title to the land. Scott Construction subsequently conveyed a portion of the land to Plaintiff who also obtained an equitable interest in the property. Under *Hall*, the Plaintiff had an interest in the real property, and not solely a contractual interest or contractual right against Scott Construction. Therefore, the court's decision that Plaintiff had no title to the property was erroneous, and should be amended to conform to the holding of the Utah Supreme Court in *Hall*. Further, the court should have applied the seven-year statute of limitations concerning real property rather than the six year statute of limitations concerning contracts.

III.   JUDGE LAYCOCK'S RULING MADE FINDINGS OF FACT WHICH CONTRADICT EVIDENCE PRESENTED BY THE DEFENDANTS THAT ALL AMERICAN ADVERSELY POSSESSED PLATS G AND H PRIOR TO MAY 31, 1995.

In Judge Laycock's previous ruling, the court made specific findings of fact regarding Plats G and H. On page 7 of the decision (Exhibit 7), in paragraph 44., the court made the specific finding that "Plat G was recorded on October 11, 1995; John C. Heiner and Reed S. Swenson were the members of All American who signed the Owner's Dedication of the plat on behalf of All American." Also, on page 8, paragraph 52., the court found that "Plat H was recorded on October 31, 1996 by John C. Heiner and Reed S. Swenson, members of All American."

The Defendants presented testimony at the recent hearing that All American had begun

15

development on Plats G and H prior to May 31, 1995, and had thus begun adversely possessing that land prior to that date. However, under general city policy, a developer cannot begin development of land prior to the recording of the final plat. According to the court's previous finding, All American could not have begun development of Plat G prior to October 11, 1995, and could not have begun development of Plat H prior to October 31, 1996. However, the court held that All American had begun development of the land prior to May 31, 1995, and that such development constituted prohibited Plaintiff from recovery. Such rulings are contradictory, and therefore, the court should amend its order to conform to the "law of the case."

## IV. THE STATUTE OF LIMITATIONS SHOULD BE TOLLED BECAUSE OF PLAINTIFF'S DISABILITY DURING 1995 AND 1996.

Under Utah Code Annotated §78-12-21 and §78-12-36, the seven-year time for adverse possession and the six year statute of limitations for actions based on contract are tolled when an individual is suffering under a disability, such as mental incompetence. In this instance, Plaintiff was suffering under a condition of Post Traumatic Stress Disorder (PTSD) during the years of 1995 and 1996, and was mentally incapable of monitoring and handling his own affairs and assets. Therefore, the statute of limitations for both adverse possession and contract should be tolled until after 1996.

In 1991, Dr. Ralph W. Gant diagnosed Plaintiff with PTSD which stemmed from an attack on Plaintiff's life which occurred after Plaintiff informed police authorities of his eye-witness account of the local drug activities of an influential individual in the community with ties to mid-eastern terrorist organizations. (See Exhibit 8). During that attack, two mid-eastern men

16

forced Plaintiff from his home and attempted to kill him with a shot gun. Plaintiff fought with the two men, and the shot gun fired, amputating Plaintiff's thumb. The two men then left the scene while making threats against the lives of Plaintiff and his children.

Dr. Gant's letter states that:

"PTSD is noted for its continuing vulnerability in the traumatized individual. That is, once diagnosed with this severe mental disorder Mr. Young is more likely than not to experience an exacerbation of this disorder under conditions of similar stress. As of the time of this evaluation Mr. Young was suffering from PTSD. With his level of stress at the time and perhaps for a significant period of time afterward he would very likely have not had the presence of mind or capacity to reliably attend to his own affairs and protect his own interests." (Exhibit 8, page 2.)

In 1995, Plaintiff applied for a dental license in Oregon and in Wyoming. Plaintiff observed two other mid-eastern men photographing his dental office, confronted them, and chased them off his property. Plaintiff was denied a license in both states after unknown individuals submitted false information regarding Plaintiff's dental practice. Then, Plaintiff came under investigation of both the U.S. Department of Commerce and the U.S. Justice Department as a result of the same false information. Plaintiff believes the false information was supplied by the same terrorist organization that sent men to kill him and to photograph his dental practice. At that time, Plaintiff began again to fear for his life and the safety of his children. Plaintiff's wife had passed away, and Plaintiff was the only caretaker of his children, some of whom were minors.

Then in 1996, Plaintiff was incarcerated in a maximum security prison in Oregon for a period of four years. During 1996, Plaintiff suffered a second attack on his life from one of the inmates. During a basketball game, an inmate attempted to stab Plaintiff with a knife. Plaintiff

17

**Exhibit N**

received large stab wound to his forearm, and fought with the inmate and broke the inmate's arm. Also, Plaintiff was housed with three other individuals, one of whom was a serial killer who had strangled several victims. Plaintiff and his cell mates all took turns on night watch to ensure that the serial killer did not attempt to kill Plaintiff and the other cell-mates in their sleep.

Clearly, Plaintiff was under extreme mental stress and in fear of his life during 1995 and 1996. According to Dr. Gant, under conditions of similar stress to that which Plaintiff experienced in 1991, i.e. threats or an attack on his life, Plaintiff would more likely than not experience an exacerbation of his previous severe PTSD. Such relapse would have caused him to be mentally incapable of taking care of his own affairs or protect his own interests. Therefore, the statute of limitations should be tolled during 1995 and 1996.

V.     THE 1982 AFFIDAVIT OF WENDELL HANSEN IS A "RED HERRING" AND SHOULD NOT BE CONSIDERED AS EVIDENCE OF NOTICE OF ANY ADVERSE CLAIMS.

The Defendants relied heavily on the 1982 affidavit of Wendell Hansen, alleging that the affidavit gave Plaintiff constructive notice of adverse claims against Plaintiff's property. (See Hansen's affidavit, attached as exhibit 9). The court ruled that Hansen's recorded affidavit gave Plaintiff constructive notice of adverse claims to the property.

However, the only thing the affidavit states is information regarding Hansen's claims of Scott Construction's alleged breach of the real estate contract, and A&H Investment's intent to repossess the property. While the affidavit appears in the chain of title, it is not an shown as an exception to the title because it does not create an encumbrance or interest in the property. (See

18

**Exhibit N**

Affidavit of Glen Roberts, attached hereafter as Exhibit 10).   Further, although Plaintiff performed several title searches regarding his notice of interest in the property, Hansen's 1982 affidavit did not appear on those title reports because it has no effect on Plaintiff's interest or the property itself.  The affidavit simply does not have any effect on the title to or ownership of the property and is therefore irrelevant to any adverse possession claims.

Moreover, in order to adversely possess land, an individual must openly and adversely possess the land under color of title for a period of seven years, and pay all property taxes during that time.  (U.C.A. § 78-12-7 *et seq*).   A close reading of the affidavit shows that Mr. Hansen states that he took no action against Plaintiff's interest in the land, but instead acknowledged that Plaintiff indeed had an interest in the land.  (See Exhibit 9, paragraphs 7 and 9).  Therefore, Hansen's affidavit does not satisfy any of the elements of adverse possession and is irrelevant to any claims of adverse possession.  Indeed, the affidavit provides absolutely no notice whatsoever of any adverse claims to Plaintiff's property.  Hansen's affidavit is merely a "red herring" which has been used to distract the court and to confuse the court's evaluation of the real issue of whether Plaintiff had notice of All American's presence and development of the land prior to May 21, 1995.

IV.   CONCLUSION

The court should amend the decision granting summary judgment in favor of Defendants for several reasons.  First, the issue of when the Plaintiff knew or should have known that he suffered a legal injury is a question of fact which cannot be decided by the court.  Second, the court made generalized decisions regarding both Plats G and H, which must be considered

19

separately for purposes of adverse possession. Third, the court made wrongful findings of fact regarding All American's activities on Plats G and H and the notice that activity provided to Plaintiff. The court's holding in those regards is not consistent with the evidence presented at the hearing. Fourth, the court wrongfully applied the six-year statute of limitation in violation of the "law of the case" doctrine since this court has previously held that the seven year adverse possession standard applies to Plaintiff's claims. Fifth, the court erroneously held that because Scott Construction did not possess legal title, Plaintiff obtained no equitable interest or title to the land and was barred by the six year statute of limitations concerning contracts. Such a holding is contrary to clearly established case law in Utah and other jurisdictions. Sixth, the court made findings which contradict this court's previous findings regarding Plats G and H. Seventh, the statute of limitations should be tolled on grounds of Plaintiff's disability. Finally, the 1982 Affidavit of Wendell Hansen is a "red herring" and should not be considered as providing notice of any adverse possession of Plaintiff's property.

Therefore, for the foregoing reasons, the court should amend its decision in this case and deny Defendants' motions for summary judgment.

DATED this 27 of May 2005

DUVAL HAWS MOODY & FREI, P.C.

Gordon Duval
Gregory G. Hansen
Attorneys for Plaintiff

20

**Exhibit N**

## CERTIFICATE OF MAILING

I certify that on this _27_ day of May 2005, I caused a true and correct copy of the **MEMORANDUM IN SUPPORT OF MOTION TO AMEND ORDER** to be mailed via first class to:

George Chingas
IVIE &YOUNG
226 West 2230 North, Ste 200
Provo, UT 84603

Richard Allen
2975 Executive Pkwy, Suite 200
Lehi, UT 84043-9785

John Wilson
Laura S. Scott
PARSONS BEHLE & LATIMER
One Utah Center
201 South Main Street, Suite 1800
P.O. Box 45898
Salt Lake City, Ut 84145-0898

Ronald G. Russell
PARR WADDOUPS BROWN GEE &
LOVELESS
185 South State Street, Suite 1300
P.O. Box 11019
Salt Lake City, UT 84147-0019

David P. Hirschi
HIRSCHI CHRISTENSEN, PLLC
136 East South Temple, Suite 850
Salt Lake City, UT 84111

_Eva L. Carlson_
Paralegal

21

**Exhibit N**

# EXHIBIT 1

Trade Agreement between Buck & Dave, Matt + Mr. Coles

## EARNEST MONEY RECEIPT AND EXCHANGE AGREEMENT

Date JANUARY 8, 1979

COLES AND COMPANY / C. KENT COLES , broker of PL. GROVE , City, State of UTAH

_____ DAVID AND CATHIE YOUNG , hereinafter called first party, offers to exchange the following described property owned by the undersigned and situated in PL. GROVE _____ County, State of UTAH , to wit: ALL OF PLAT "D" PLAT SUBTREE CEMETARY

LOTS OF ALL LOTS SIXTEEN APPROVED AND UNRECORDED WITH IMPROVEMENTS OF PROPERTY _____

$ _____ held by BRETT CONSTRUCTION _____

(mortgage/contract) balance of approximately $ _____ per annum (including/not including) interest rate _____

IS OFFERED IN EXCHANGE FOR

The property owned by Scott Construction , of ____ hereinafter called the second party, situated in PL. GROVE _____

County, State of Utah , to wit: 26 LOTS TO PLAT F _____

Plat $15,000 in cash or on before August 21,1979 ___ for $3.CA.57,58 of Plat F to regain the ownership of Scott Construction Lot $3.CA.57,58 of Plat F to regain $9,168,000 ___

## TERMS AND CONDITIONS OF EXCHANGE

together with $ 16,000 to be paid as follows: 25 Lots of Value plus the $16,000 ___

August 21, 1979 Lot 63,64,67,88 of Hester Plat (see attached) Buying the property for Scott Construction Inc. 1/year has option ___

State Securities Commission, in the name of David and Cathie Young ___ Scott Construction Inc. ___

First Party ___
Second Party ___

First Party ___
First Party ___

1-8 , 1979

First Party ___
First Party ___

45. Witness _____

## ACCEPTANCE

The undersigned, Second Party, acknowledges that he has read the entire foregoing Exchange Agreement and understands the terms and conditions set forth therein and does hereby accept this agreement and agrees to the exchange herein.

1ST PARTY AGREES TO EXCHANGE PROVIDING THAT INTEREST PAYMENTS TO SCOTT CONSTRUCTION
ON EQUITY, WILL NOT BEGIN OR ACCRUE UNTIL A FINAL PLAT IS FURNISHED BY SCOTT CONSTRUCTION
AND WATER LINE IS INSTALLED TO 1100 NORTH BY PL. GROVE; AND ALL WATER AND SEWER LINES A
STUBBED TO LOTS 65,66,158,74, 145,142,143,83.
DAVE YOUNG ACKNOWLEDGES THAT IF HE DEVELOPS IN THE YEAR 1980, THAT HIS INDEBTEDNESS TO
SCOTT CONSTRUCTION INCREASES BY $500.00 PER ACRE. IF HE DEVELOPS IN THE YEAR 1981
HIS INDEBTEDNESS INCREASES ANOTHER $500.00 PER ACRE.

**Exhibit N**

72. As earnest money and evidence of good faith and to show her deposit _____ and agrees to pay to said Broker the sum of $ _____

73. broker, the sum of $ _____ NONE _____ in the form of _____ NONE _____ and agrees to pay to said Broker the sum of $ _____ upon execution of this agreement by all parties hereto.

80. rendered in connection with the exchange, such commission to become payable upon execution of this agreement by all parties hereto.

81. Date _____ 19 _____

82. Witness _____

84. _____ Received from the above named Second Party the sum of $ _____ 19 _____

85. _____

86. The undersigned, hereby acknowledges receipt of a signed copy of the foregoing Exchange

87. Date _____ 19 _____

88. Date _____ 19 _____

Second Party _____

Second Party _____

to be held, used, and disbursed in accordance with the foregoing instructions.

Broker _____

By Agent _____

Agreement, duly accepted bearing all signatures.

First Party _____

Second Party _____

_____ SECURITIES COMMISSION

**Exhibit N**

# EXHIBIT 2

E.S.P.
Excavation by Steve Phelon
217 South Center
AMERICAN FORK, UTAH 84003
(801) 756-7709

**JOB INVOICE**

**5233**

| | | |
|---|---|---|
| CUSTOMERS ORDER NO. | DATE ORDERED | |

| | |
|---|---|
| ORDER TAKEN BY | DATE PROMISED 1-27 |

BILL TO  All American

ADDRESS

CITY

PHONE

MECHANIC

HELPER

JOB NAME AND LOCATION  Wade Springs Plot 6TH

DESCRIPTION OF WORK  locate Sewer , water , Storm drain

1-5hrs Labor 4hrs Trackhoe

1-30  4hr Trackhoe

☐ DAY WORK
☐ CONTRACT

| QUANT. | DESCRIPTION OF MATERIAL USED | PRICE | AMOUNT | |
|---|---|---|---|---|
| Q | hrs. Loader 150 | | | |
| | hrs. Bobcat | | 600 | 00 |
| | hrs. Dump Truck Bobtail | | | |
| | hrs. Endump | | | |
| | hrs. Backhoe | | | |
| | yds. Topsoil | | | |
| | yds. Fill | | | |
| | tons Slag 4120 | | | |
| | tons Slag Bank Run | | | |
| | tons Pea Gravel | | | |
| | | | | |
| | INVOICE # 5233 | | | |
| | JOB # | | | |
| | PAY DATE | | | |
| | G/L # 13207 | | | |

| HOURS | LABOR | AMOUNT | | |
|---|---|---|---|---|
| | MECHANICS | | TOTAL MATERIALS | |
| | HELPERS | | TOTAL LABOR | |
| I hereby acknowledge the satisfactory completion of the above described work. SIGNATURE | TOTAL LABOR | | | |
| | DATE COMPLETED | | TAX | |
| | | | TOTAL | 600 00 |

1102361

**Exhibit N**

**JOB INVOICE**

**5276**

Z.S.P.
...on by Steve Phelon
217 South Center
...RICAN FORK, UTAH 84003
(801) 756-7709

| CUSTOMERS ORDER NO. | DATE ORDERED |
|---|---|
| ORDER TAKEN BY | DATE PROMISED 2 - 20 |

**BILL TO** All American

**ADDRESS** ___

**CITY** ___

PHONE

MECHANIC

HELPER

**JOB NAME AND LOCATION** Wade Spring Dev Plat 6.

**DESCRIPTION OF WORK** Knock down Poles for Staking

3413 Loader.

☐ DAY WORK
☐ CONTRACT
☐ EXTRA

| QUANT. | DESCRIPTION OF MATERIAL USED | PRICE | AMOUNT |
|---|---|---|---|
| 3 | hrs. Loader 190 | | 225 00 |
| | hrs. Bobcat | | |
| | hrs. Dump Truck Bobtail | | |
| | hrs. Endump | | |
| | hrs. Backhoe | | |
| | yds. Topsoil | | |
| | yds. Fill | | |
| | tons Slag 4128 | | |
| | tons Slag Bank Run | | |
| | tons Pea Gravel | | |
| | Saw Cut Road | | 200 00 |
| | INVOICE # 5276 | | |
| | JOB # Wade Spring 6 | | |
| | PAY DATE 3/10 | | |
| | GA # 13804 | | |

| HOURS | LABOR | | AMOUNT | TOTAL MATERIALS | |
|---|---|---|---|---|---|
| | MECHANICS | 0 | | | |
| | HELPERS | 0 | | TOTAL LABOR | |

I hereby acknowledge the satisfactory completion of the above described work.

SIGNATURE ___

TOTAL LABOR ___

DATE COMPLETED ___

TAX ___

**TOTAL** 425 00

**TOTAL** 294 00

1112362

**Exhibit N**

**JOB INVOICE**

**5356**

S.P.
by Steve Phelon
South Center
AN FORK, UTAH 84003
(801) 756-7709

INVOICE #:
CUSTOMER ORDER NO.
DATE ORDERED

JOB #: Wad
ORDER TAKEN BY
DATE PROMISED ☐ A.M. ☐ P.M.

PAY DATE: 4/10
PHONE

All America
G/L #: 13204
MECHANIC

ADDRESS

CITY
HELPER

JOB NAME AND LOCATION: Wade Dillage Plat G.    ☐ DAY WORK
☐ CONTRACT
DESCRIPTION OF WORK: Enslgn Sewer + Water Mains    ☐ EXTRA

mber:  16
Date:  Ap
ount:  $8
ken  Am

| QUANT. | DESCRIPTION OF MATERIAL USED | PRICE | AMOUNT | |
|---|---|---|---|---|
| | Tie on Sewer | | 250 | 00 |
| 5ea | Manholes | 1500 | 9500 | 00 |
| 1365' | 8" Sewer | 12LF | 16380 | 00 |
| 2ea | 8" Plugs | 20ea | 40 | 00 |
| 20ea | Sewer Laterals | 350ea | 7000 | 00 |
| | Tie Water main | | 250 | 00 |
| 796' | 12" Ductile main | 18LF | 14328 | 00 |
| 2ea | 45° Bends | 275ea | 550 | 00 |
| 4ea | 12" Valves | 775 | 3100 | 00 |
| 5ea | 12X12X6 Tees | 350ea | 1750 | 00 |
| 1ea | 12" Plug | 150ea | 150 | 00 |
| 689' | 6" Ductile main | 11LF | 7579 | 00 |
| 3ea | 6" Valves | 350ea | 1050 | 00 |
| 2ea | 6" Plugs | 110ea | 220 | 00 |
| 3ea | Fire hydrants | 1350ea | 4050 | 00 |
| 20ea | Water Services | 375ea | 7500 | 00 |

| HOURS | LABOR | AMOUNT | | |
|---|---|---|---|---|
| | MECHANICS Excate Sewer corpiel | TOTAL MATERIALS | 500 | 00 |
| | HELPERS | TOTAL LABOR | | |
| | I hereby acknowledge the satisfactory completion of the above described work.  TOTAL LABOR | TAX | 72197 | 00 |
| | SIGNATURE     DATE COMPLETED | TOTAL | | |

1102363

**Exhibit N**

by Steve Phelon
7 South Center
CAN FORK, UTAH 84003
(801) 756-7709

**JOB INVOICE**

**5473**

| CUSTOMERS ORDER NO. | DATE ORDERED |
|---|---|

| BILL TO | | ORDER TAKEN BY | DATE PROMISED ☐ A.M. |
|---|---|---|---|
| American | | | 5-2-9☐ P.M. |
| ADDRESS | | | PHONE |
| CITY | | | MECHANIC |
| JOB NAME AND LOCATION | | | HELPER |
| WS - Chorch | | | |

DESCRIPTION OF WORK
Dis 001 Dagin + Bason that   ☐ DAY WORK
Chorch filled in                              ☐ CONTRACT
                                                      ☐ EXTRA

| QUANT. | DESCRIPTION OF MATERIAL USED | PRICE | AMOUNT |
|---|---|---|---|
| 2 | hrs. Loader | | |
| | hrs. Bobcat | | 255 00 |
| | hrs. Dump Truck Bobtail | | |
| | hrs. Endump | | |
| | hrs. Backhoe | | |
| | yds. Topsoil | | |
| | yds. Fill | | |
| | tons Slag 4120 | | |
| | tons Slag Bank Run | | |
| | tons Pea Gravel | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

INVOICE #: 5473
JOB # WS ☐☐
PAY DATE Thirkhan
GA # 13 20

| HOURS | LABOR | | AMOUNT | | |
|---|---|---|---|---|---|
| MECHANICS | | @ | | TOTAL MATERIALS | |
| HELPERS | | @ | | TOTAL LABOR | |

I hereby acknowledge the satisfactory completion of the above described work.
SIGNATURE

TOTAL LABOR

DATE COMPLETED

TAX

TOTAL 255 00

per:   1912
te:   Jun 1
t:   $13,19

Amount

2
18
7
75
210
260.
890.
310.
145.0
97.0

1102364

**Exhibit N**

JOB INVOICE

5283

...P.
...by Steve Phelon
...South Center
...AN FORK, UTAH 84003
(801) 756-7709

| CUSTOMERS ORDER NO. | DATE ORDERED |
|---|---|
| ORDER TAKEN BY | DATE PROMISED ☐ A.M  3-1-96 P.M. |
| | PHONE |

ADDRESS   _Amsterdam_

| CITY | MECHANIC |
|---|---|
| | HELPER |

JOB NAME AND LOCATION   _Wade Springs Plat G. Dev_

DESCRIPTION OF WORK   _Road Dirt Work_

☐ DAY WORK
☐ CONTRACT
☐ EXTRA

| QUANT. | DESCRIPTION OF MATERIAL USED | PRICE | AMOUNT |
|---|---|---|---|
| | hrs. Loader L90 | | |
| | hrs. Bobcat | | |
| | hrs. Dump Truck Bobtail | | |
| | hrs. Endump | | |
| | hrs. Backhoe | | |
| | yds. Topsoil | | |
| | yds. Fill | | |
| | tons Slag 4120 | | |
| | tons Slag Bank Run | | |
| | tons Pea Gravel | | |

PROJECT #  5283
JOB #  Wade Springs
PAY DATE
GL #  3204

_Fill + Compact - Subgrade Road_

| HOURS | LABOR | AMOUNT | | |
|---|---|---|---|---|
| MECHANICS | 0 | | TOTAL MATERIALS | |
| HELPERS | 0 | | TOTAL LABOR | |

I hereby acknowledge the satisfactory completion of the above described work.

SIGNATURE

| TOTAL LABOR | DATE COMPLETED | TAX | |
|---|---|---|---|
| | | TOTAL | 10800.00 |

r:  2134
    Jul 10,
$32,198.0
Amount Pai
    10,800.
       150.
       120.0
       120.0
       897.0
       996.00
     1,382.00
     1,256.00
       880.00
       500.00

1102365

Exhibit N