IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID YOUNG,<br><br>      Plaintiff,<br><br><br><br>         vs.<br><br><br>KEVIN ROBSON, DANIEL BERTCH,<br>BERTCH & BIRCH, GORDON DUVAL,<br>GREGORY HANSEN, and DUVAL, HAWS,<br>MOODY & FREI PC,<br><br>      Defendants. | MEMORANDUM DECISION AND<br>ORDER GRANTING MOTIONS FOR<br>SUMMARY JUDGMENT<br><br><br><br>Case No. 2:07-CV-643 TS |

This matter is before the Court on Motions for Summary Judgment filed by the two sets of

Defendants.  In the underlying case, Plaintiff is suing Defendants Kevin Robson, Daniel Bertch, and

Bertch & Birch, P.C. (collectively, the "Bertch Defendants") for legal malpractice, claiming that they

failed to file the appropriate court documents that would have protected him from losing certain

property located in Pleasant Grove, Utah (the "Property") through adverse possession.  Plaintiff is

also suing Defendants Gordon Duval, Gregory Hansen, and the law firms of Duval Hansen Witt &

Morley, P.C., Duval Hansen Moody & Frei, P.C., and Duval Haws & Moody, P.C. (collectively, the

"Duval Defendants") for legal malpractice for failure to file affidavits to support memoranda in

opposition to motions for summary judgment in the preceding Utah state case, in which case the Utah court granted summary judgment and divested Plaintiff of any interest he had in the Property.

Both the Bertch Defendants and the Duval Defendants argue that their actions cannot be the proximate cause of Plaintiff's loss because any interest owned by Plaintiff in the Property had already passed to others via adverse possession by, at the very latest, July 2000. Plaintiff argues that adverse possession did not run until after he had retained the Bertch Defendants. The Duval Defendants also argue that Plaintiff never had a possessory interest in the Property, due to a breach of contract in 1981 by the entity who was to sell Plaintiff the Property. Plaintiff responds that the Utah court's decision to that effect was the result of the Duval Defendants' legal malpractice.

There are also two Motions to Strike filed by Plaintiff. Duval Defendants filed a Memorandum in Support of the Bertch Defendants' Motion for Summary Judgment, and Plaintiff filed a Motion to Strike that memorandum. Plaintiff also moves the Court to strike the Affidavit of Gordon Duval in Support of Duval Defendants' Reply Memorandum.[1]

For the reasons set forth below, the Court will grant the Defendants' Motions for Summary Judgment. Furthermore, because the Court could arrive at its holding without considering the documents Plaintiff wishes to strike, Plaintiff's Motions to Strike will be denied.

## I.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[1]Docket No. 109.

[2]*See* Fed. R. Civ. P. 56(c).

a verdict for the nonmoving party in the face of all the evidence presented.[3]   The Court is required

to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4]

"Conclusory allegations, however, do not establish an issue of fact under Rule 56 [of the Federal

Rules of Civil Procedure]."[5]

## II.  BACKGROUND

Plaintiff entered into an agreement with Scott Construction ("Scott") to purchase the Property

on January 8, 1979.  At the time, Scott was apparently in the process of purchasing the Property from

A & H Investment ("A&H").  Paragraph 9 of the agreement between Scott and A&H provides that

default by Scott entitles A&H to "enter and take possession of said property without legal process"

and that all payments made up to the point of default "shall be forfeited to [A&H] as liquidated

damages for the non-performance."[6]

Plaintiff recorded a Notice of Interest in the Property in Utah County, Utah on December 23,

1980.  On June 25, 1981, a Mr. Boyd Park, ostensibly representing A&H, authored a letter to be

delivered to Plaintiff, advising him that Scott was in default of its contractual obligations and that

A&H would likely be foreclosing on certain portions of the property.[7]   Plaintiff asserts that he did

not receive the letter until presented to him by a third party in 2004.  Plaintiff also asserts that Mr.

---

[3]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[5]*Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007).

[6]Docket No. 107, Ex. B, ¶ 9(a).

[7]Docket No. 85, Ex. 4.

Park has stated that he never represented A&H, leading Plaintiff to conclude that the letter is fraudulent.  On March 15, 1982, Wendell Hansen, a principal of A&H, recorded an affidavit indicating that Scott was in default of their agreement with A&H and that A&H had repossessed certain properties pursuant to the terms of their agreement.[8]  It is undisputed that neither Scott nor Plaintiff ever recorded title to the Property in their names.  In total, Scott had made over $700,000 in payments to A&H for the purchase of the Property.  However, Mr. Hansen testified at a deposition that a $150,000 down payment was never made, and that payments were never made in 1978 or in any year after 1980.

In February 1993, All American Development ("All American") purchased portions of the Property known as the Plat E Lots.  On March 8, 1993, All American submitted its design documents for the Plat E Lots.  Water and sewer improvements were approved by March 11, 1993.  All American then began to make improvements on the land, including "cutting roads and installing the water and sewer pipes to the various Plat E Lots."[9]  Those improvements were completed no later than May 15, 1993, which was the day that All American applied for its first building permit for Lot 18 of the Plat E Lots.  A second building permit was filed on June 23, 1993, for Lot 14 of the Plat E Lots.  According to photographic evidence provided by the Bertch Defendants,[10] by July 25, 1993, the basement had been poured and the home framed on Lot 14.  Additional foundations on neighboring Plat E Lots are also visible, and preparations for roads and gutters had been made

---

[8]*Id.*, Ex. 5.

[9]Docket No. 77, ¶ 4.

[10]Docket No. 76, Ex. A.

4

throughout the Plat E Lots.[11]  Additional building permits, including a second building permit for Lot 18, were issued after August 1993.  All American and subsequent purchasers of the Plat E Lots paid property taxes on the Property.

On January 3, 1995, All American recorded title to additional portions of the Property, known as Plat G and Plat H, which it had previously purchased from A&H.[12]   All American began making improvements on Plats G and H in early 1995.  All American paid property taxes on Plats G and H until homes were constructed and the Plat G Lots and Plat H Lots were sold to individual homeowners, who then paid property taxes on their own homes.

On July 31, 2000, Plaintiff spoke with Defendant Bertch concerning legal representation in protecting Plaintiff's interest in the Property.  On approximately August 5, 2000, Plaintiff retained the Bertch Defendants to represent him and informed them of the need to take action immediately to avoid possible adverse possession claims.  The Bertch Defendants drafted a complaint for Plaintiff and contacted various property owners, but ultimately did not file the complaint or any other document in any court, and withdrew as counsel for Plaintiff on February 23, 2001.

On February 27, 2001, Plaintiff signed an initial agreement with the Duval Defendants,[13] and later signed a formal agreement on March 26, 2001.  The Duval defendants filed a complaint on Plaintiff's behalf in Utah state court in May 2002.  On January 20, 2004, the Utah state court granted

---

[11]The Duvall Defendants repeatedly argue that, by July 25, 1993, "All American had poured sidewalks, completed roads, and begun to build a home on lot 14."  Docket No. 107 at 7-8.  Photographic evidence supports the final claim, and preparations had been made for roads and sidewalks, but there is no evidence that any roads and sidewalks had been completed by the time of the photographic evidence.

[12]Plat H appears to have been purchased in December 1994, and Plat G in early 1995.

[13]Defendant Hansen did not join the firm until August 2, 2004.

5

summary judgment to the homeowners on the Plat E Lots, stating that the seven-year period for adverse possession had run prior to May 2002, when Plaintiff filed his complaint. The Utah state court denied summary judgment to the homeowners on the Plat G Lots and Plat H Lots, stating that the homeowners could not show that the seven-year period had run prior to May 2002.

On March 22, 2004, Plaintiff entered into a contingent fee agreement with attorney Stephen Quesenberry. That agreement set forth the terms of the representation Quesenberry was to provide to Plaintiff, and modified the existing agreement between Plaintiff and the Duval Defendants. Under the modification, the Duval Defendants were to withdraw from representing Plaintiff after assuring that Quesenberry was substituted for the Duval Defendants. The Duval Defendants were required to "turn[] over all files, answer[] all questions, and provid[e] such *limited* services as requested by Quesenberry."[14] The modification also expressly waived "any and all claims [Young] has or may have against Duval arising from Duval's representation of Young in this matter."[15] The modification was signed by Defendant Duval and Plaintiff. At some point subsequent, however, Quesenberry withdrew as counsel for Plaintiff, and the Duval Defendants again acted as counsel for Plaintiff in his Utah state court proceedings.

On April 14, 2005, the Utah state court granted summary judgment to the remaining homeowners of the Plat G Lots and Plat H Lots. On May 17, 2005, the Utah state court entered an Order and Final Judgment,[16] in which it listed Duval and Hansen as counsel for Plaintiff, and found

---

[14]Docket No. 85, Ex. 8.

[15]*Id.* Defendant submits an undated letter to Duval indicating his desire to change the waiver of claims language. Docket No. 103, Ex. M. However, there is no evidence that Plaintiff's preferred language was ever adopted.

[16]Docket No. 85, Ex. 9.

that "Plaintiff either admits or does not specifically controvert the material facts supporting Defendants' Motions for Summary Judgment."[17]   The Utah court concluded that: (1) the homeowners had obtained title to their properties through adverse possession, including the time the properties were possessed by All American; (2) Scott never held title to the Property and could not have conveyed equitable or legal title to the Property to Plaintiff; and (3) Plaintiff's proper claim was for breach of contract against Scott, but that claim was barred by the six-year statute of limitations found in Utah law.[18]

On May 27, 2005, Plaintiff, through the Duval Defendants, filed a Motion to Amend Order, in which he argued, among other things, that the court had made improper findings of fact concerning disputed material facts and which contradicted evidence presented by the defendants. Plaintiff, through the Duval Defendants, submitted affidavits and other evidence in support of their motion, but that evidence was disregarded by the Utah court because the evidence had not been submitted with their original opposition to summary judgment, as required by Rule 7 of the Utah Rules of Civil Procedure.

In the present case, in his Third Amended Complaint,[19] Plaintiff alleges that the Bertch Defendants committed legal malpractice and caused injury to him by failing to take timely action to prevent successful adverse possession claims by All American or the homeowners.  Plaintiff alleges that the Duval Defendants committed malpractice by "failing to adequately support responses to motions for summary judgment filed by the [state court] defendants . . . with affidavits or other

---

[17]*Id.*, Ex. 9, at 2.

[18]Utah Code Ann. § 78-12-7.

[19]Docket No. 60.

7

discovery as required under the Utah Rules of Civil Procedure . . . and failing to take all necessary steps to protect Plaintiff's legal interests."[20]

### III.  DISCUSSION

In a legal malpractice action, a plaintiff must plead and prove "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages."[21]  The Bertch Defendants base their Motion on the inability of Plaintiff to prove proximate cause.  "Proximate cause is that cause which, in natural and continuous sequence[] (unbroken by an efficient intervening cause), produces the injury and without which the result would not have occurred.  It is the efficient cause–the one that necessarily sets in operation the factors that accomplish the injury."[22]  In order to prove proximate causation in a legal malpractice action, the client must "show that if the attorney had adhered to the ordinary standards of professional competence and had done the act he failed to do or not done the act complained about, the client would have benefited."[23]

The Duval Defendants also base their Motion primarily on Plaintiff's failure to prove proximate cause, but also argue that Plaintiff waived all claims against the Duval Defendants in

---

[20]*Id.*, ¶ 46.

[21]*Christensen & Jensen, P.C. v. Barrett & Daines*, 194 P.3d 931, 938 (Utah 2008) (quoting *Harline v. Barker*, 912 P.2d 433, 439 (Utah 1996)).

[22]*Harline*, 912 P.2d at 439 (brackets in original, citations omitted).

[23]*Christensen & Jensen, P.C.*, 194 P.3d at 938 (citing *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1291 (Utah Ct. App. 1996)).

March 2004 and that Defendant Hansen was only employed by the other Duval Defendants as of

August 2, 2004, and therefore cannot be held liable for anything which occurred prior to that date.

A.      BERTCH DEFENDANTS' MOTION

Plaintiff essentially argues that the Bertch Defendants were the cause of him losing his

interest in the Property to adverse possession because they failed to file a complaint prior to the

termination of the seven-year period of possession by the adverse possessors.  Under Utah law, "one

who claims property by adverse possession must show that his use and possession of the property

has been actual, open and notorious, and continuous for the statutory period, and must have paid all

taxes levied on the property during the statutory period."[24]

Land is considered to have been actually possessed if it has been "usually cultivated and

improved"[25] by making changes that "would apprise anyone that the land was being used in the

manner in which an owner would so use it."[26]  For possession to be open and notorious, it must be

conduct which gives "a reasonably prudent title holder notice of the claimant's intention"[27] by being

inconsistent with the rights of the owner.  Adverse possession is established when the current

possessor "and the party's predecessors and grantors" have been in possession and paid all taxes

levied on the property continuously for seven years.[28]  So long as there is privity between two

---

[24]*Allred ex rel. Jensen v. Allred*, 182 P.3d 337, 342 (Utah 2008) (citing *Royal Street Land Co. v. Reed*, 739 P.2d 1104, 1106 (Utah 1987)).

[25]Utah Code Ann. § 78B-2-211.

[26]*Day v. Steele*, 184 P.2d 216, 219 (Utah 1947).

[27]*Olwell v. Clark*, 658 P.2d 585, 587 (Utah 1982).

[28]Utah Code Ann. § 78B-2-214.

successive adverse possessors, the periods of possession of predecessor and successor may be combined to meet the statutory period.[29]

The evidence shows that All American purchased the Plat E Lots from A&H in February1993, and began developing the property shortly after receiving approval from the City of Pleasant Grove to begin cutting roads and installing water and sewer pipes.  Such development constitutes actual possession of the Plat E Lots and is sufficiently inconsistent with the rights of a reasonably prudent owner that it constitutes open and notorious possession.  While the exact date that development commenced is unknown, photographic evidence clearly shows that it was well underway by July 25, 1993.  Plaintiff introduces evidence of other work and other permits being conducted after July 25, 1993, but this evidence does not controvert the photographic evidence which shows that All American's possession was actual, open and notorious at some point prior to July 25, 1993.

Plaintiff cites to Utah Code Ann. § 78B-2-210, which states that "[w]hen the property so included consists of tracts divided into lots, the possession of one lot is not considered a possession of any other lot of the same tract."  The Utah court conducted a lot-by-lot analysis of the Plat E Lots, and concluded that adverse possession was complete by May 31, 2002.  Plaintiff argues that the time of adverse possession must be accomplished on a lot-by-lot analysis, and that the time of adverse possession begins only when All American sold the lots to their individual owners.  In essence, Plaintiff argues that the time of adverse possession starts afresh whenever a tract of land is subdivided, but Utah Code Ann. § 78B-2-210 does not require such an extreme interpretation, nor would such an interpretation be consistent with the remainder of Utah adverse possession law.

---

[29]*Home Owners' Loan Corp. v. Dudley*, 141 P.2d 160, 168 (Utah 1943).

All American sold the property to the individual homeowners at various times, but the sale of the Plat E Lots establishes privity between All American and the homeowners, allowing the periods of possession to be combined.  Therefore, the statutory period for adverse possession on the Plat E Lots was fulfilled by July 25, 2000, and there was nothing the Bertch Defendants could have done in early August 2000, to avoid the loss of the Plat E Lots suffered by Plaintiff.  Plaintiff, therefore, cannot prove proximate causation and the Bertch Defendants are entitled to summary judgment on Plaintiff's claims related to the Plat E Lots.

Plaintiff also cannot prove proximate causation regarding his losses related to the Plat G Lots and Plat H Lots, but for entirely different reasons.  All American did not purchase the Plat G Lots and Plat H Lots until January 3, 1995, and even if development began instantaneously, the soonest adverse possession could have been complete was January 3, 2002.  Because the Bertch Defendants ceased to represent Plaintiff in February of 2001, the time period had not yet expired for Plaintiff to defend his interest in the Plat G Lots and Plat H Lots from the adverse possession claims of the homeowners.  Plaintiff obtained new representation by March 26, 2001, and had sufficient time to pursue legal action prior to the seven year time period expiring.

Plaintiff argues, however, that he assumed that the Bertch Defendants had filed a draft complaint which they included in a September 25, 2000 letter to Plaintiff,[30] and therefore did not press his new counsel to file a complaint.  However, the letter states that the Bertch Defendants would not be filing the draft complaint at that time, and Plaintiff has identified no other place where the Bertch Defendants indicate that they intended to file, or had filed, the draft complaint.  Plaintiff complains that he was never informed that the complaint had not been filed, but since the Bertch

---

[30]Ex. 86-2 at 12.

Defendants had never told him that it had been or would be filed, the lack of notice is not surprising. It would be a heavy duty, indeed, for an attorney to be required to notify a client of every action *not* taken on behalf of the client.

Because Plaintiff cannot direct the Court to any action by the Bertch Defendants which is the proximate cause of the loss to Plaintiff of his interest in the Plat G Lots and Plat H Lots, summary judgment for the Bertch Defendants is appropriate.

B.      DUVAL DEFENDANTS' MOTION

Because the Plat E Lots were lost to Plaintiff by July 25, 2000, there was nothing that the Duval Defendants could have done to protect any interest owned by Plaintiff in those lots after the Duval Defendants' representation of Plaintiff began in March 2001.   Therefore, the Duval Defendants are entitled to summary judgment on Plaintiff's claims regarding the Plat E Lots.

However, Plaintiff's claims against the Duval Defendants are not limited to actions not taken with regard to potential adverse possession claims.  Plaintiff asserts that the Duval Defendants failed to take "all necessary steps" to protect Plaintiff's interests in the Plat G Lots and Plat H Lots. Specifically, Plaintiff argues that the Duval Defendants could have protected his interests by filing affidavits in support of Plaintiffs opposition to the motion for summary judgment filed in the Utah state court case.  The Utah court, in rejecting Plaintiff's state court motion to amend, specifically noted that Plaintiff's submission contained evidence not presented with the memorandum in opposition to summary judgment and the Utah court, therefore, refused to consider that evidence.

Plaintiff argues that the evidence possessed by the Duval Defendants would have been sufficient to overcome the motion for summary judgment and that the loss of his interest in the Plat G Lots and Plat H Lots was proximately caused by the Duval Defendants' miscalculation in not submitting the evidence to the Utah court.  That evidence is identified by Plaintiff as: (1) all

contracts signed by Plaintiff; (2) a title search of the Property paid for by Plaintiff; (3) property tax records for the Property; (4) testimony from expert title attorneys that the Notice of Interest was valid; (5) and various witness statements from those who witnessed the sale of the Property by A&H to Scott.  Plaintiff has provided some, but not all, of the evidence in this case.

As a preliminary matter, the undisputed evidence establishes that Defendant Hansen was hired as an attorney by Defendant Duval Haws Moody & Frei on or about August 2, 2004.  The evidence indicates that he may have had some involvement with the firm prior to that date, but not as an attorney.  Plaintiff does not dispute the Duval Defendants' contention that their allegedly negligent actions occurred in connection with the August 7, 2003 filing, in the state court case, of a motion in opposition to summary judgment.[31]  The undisputed facts of the case establish that no attorney-client relationship could have existed between Defendant Hansen and Plaintiff during the relevant time period, and the Court will grant summary judgment to Defendant Hansen.

In order to prove proximate causation, Plaintiff must be able to show that he would have successfully defeated the state-court motion for summary judgment.[32]  There is a great deal of evidence provided by both parties, but the narrow question before the Court is whether or not the evidence identified by Plaintiff would have been sufficient, in the Utah case, to defeat summary judgment.  The Utah court decision is of little help because the Utah court did not consider the merits of the evidence submitted with the motion to amend.  However, the standard for summary judgment

---

[31]Docket No. 85 at vi, ¶ 28.

[32]*Christensen & Jensen, P.C.*, 194 P.3d at 939 (holding that proximate causation requires a showing that "absent the conduct complained of . . . the client would have benefitted").

in Utah is virtually identical to the standard required by the Federal Rules of Civil Procedure.[33] Therefore, the Court will analyze whether consideration of the evidence presented by Plaintiff in this case would have resulted in denial of summary judgment in the state court case.

The Utah court granted summary judgment on two grounds: first, that Plaintiff was barred from asserting an interest in the Property because All American and the subsequent homeowners had adversely possessed the Property by January 2002; and second, that Plaintiff was barred from asserting an interest in the Property because he never received an interest from Scott.

Of the evidence which Plaintiff argues should have been submitted to the Utah court, only the property tax records for the Property are relevant to the issue of adverse possession. In this case, Plaintiff has failed to provide the Court with that evidence, which Plaintiff argues would have shown that property taxes were not paid on the Property for seven years, raising a genuine issue of material fact as to adverse possession. Because Plaintiff has not provided that evidence to the Court, the Court cannot conclude that the state court would have denied summary judgment on the issue of adverse possession if the evidence had been timely submitted by the Duval Defendants.

The remaining evidence is relevant to the question of whether Plaintiff ever held an interest in the Property or whether Scott failed to transfer an interest due to his alleged default on his contract with A&H. It does not appear that the evidence identified by Plaintiff would have resulted in a defeat of summary judgment. The Utah court identified the Real Estate Purchase Contract between A&H and Scott as the source of its holding that Scott had defaulted and, therefore, lost its interest in the Property. Any contracts signed by Plaintiff would have been irrelevant to whether or not Scott

---

[33]*Id.* at 937 ("The granting of summary judgment is appropriate only in the absence of any genuine issue of material fact and where the moving party is entitled to judgment as a matter of law.").

maintained an interest in the Property, for Plaintiff's contracts would show an attempt to transfer an interest in the Property, but if Scott did not possess such an interest, it could not contract to transfer it to Plaintiff. Likewise, a title search of the Property and the legal opinions of title attorneys as to the legality and validity of the Notice of Interest are also irrelevant to the question of whether Scott had an interest in the Property which he could then transfer to Plaintiff.

Plaintiff spends a good deal of time arguing that he had title due to equitable conversion, but the doctrine of equitable conversion does not apply to this case. Equitable conversion declares that a purchaser of land who has paid the purchase price for land may prevail in obtaining specific performance in the transfer of legal title from the seller if the seller refuses to comply with the terms of the contract for sale of land.[34] The question before the Utah court, and presently before this Court, is not whether the seller (Scott) should be required to transfer legal title to one who has obtained equitable title via a contractual agreement. Instead, the present question is whether the entity which claimed to have a valid interest to sell did, in fact, possess such an interest. If Scott had no interest, as the Duval Defendants claim,[35] then there can be no transfer of interest from Scott to Plaintiff. Plaintiff's arguments regarding equitable conversion are, therefore, inapplicable to the present case.

Only the testimony and evidence surrounding the contractual arrangement between Scott and A&H would have been relevant to the Utah court's consideration of whether Plaintiff ever received an interest in the Property. Much of that evidence has been presented to the Court and that evidence reveals no genuine issues of material fact. The evidence shows that Scott paid over $700,000 to

---

[34]*Butler v. Wilkinson*, 740 P.2d 1244, 1255 (Utah 1987).

[35]Contrary to Plaintiff's assertions, the Duval Defendants do not argue that Scott's interest was eliminated due to foreclosure. *See* Docket No. 102 at 2. Rather, the Duval Defendants argue that Scott never had an interest because it defaulted on its contractual obligations and A&H repossessed the Property.

A&H as installments in purchasing the property, but the evidence also shows that certain payments, including a $150,000 down payment, were never made.  Moreover, the agreement between Scott and A&H allows for A&H to repossess the Property and keep all payments made as liquidated damages. The Duval Defendants have also provided an affidavit by one of the principals of A&H that the Property was repossessed no later than March 15, 1982.  Moreover, Plaintiff has provided no evidence that Scott or Plaintiff ever recorded title to the Property.

Even construing the facts in the light most favorable to the Plaintiff, he has failed to establish the existence of any genuine issues of material fact.  Because the undisputed evidence would not allow a reasonable jury to conclude that the Duval Defendants were the proximate cause of Plaintiff's alleged injuries, the Duval Defendants are entitled to judgment as a matter of law, and summary judgment is appropriate.

The Duval Defendants also argue that Plaintiff signed an agreement waiving all rights to sue the Duval Defendants as a result of their representation of Plaintiff in this matter.  The agreement is clearly signed by both parties, and certain changes have been made and initialed.  Plaintiff argues, essentially, that there was no meeting of the minds regarding the intent of the contract and provides a letter he allegedly sent to the Duval Defendants, requesting additional changes.  The Duval Defendants claim to never have received the letter, but even if they had, the changes requested by Plaintiff were never made.  However, Plaintiff has argued, in effect, that the Duval Defendants breached the contract by not cooperating with Quesinberry, which caused him to withdraw from the case.  Additionally, there is no evidence that the Duval Defendants withdrew from the case, as required by the contract.  A reasonable jury could find that Plaintiff is not bound by the waiver because the Duval Defendants breached the contract, and summary judgment would be inappropriate if based solely on these grounds.  The Affidavit which is the subject of Plaintiff's second Motion to

16

Strike deals almost exclusively with this final issue.  Because the Court need not consider the Duval Defendants' claims of waiver in order to grant summary judgment, as described above, the Court will deny Plaintiff's second Motion to Strike.

### IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion to Strike Memorandum of Duval Defendants in Support of Bertch Defendants' Motion for Summary Judgment  (Docket No. 104) and Motion to Strike Affidavit of Gordon Duval in Support of Defendants' Reply Memorandum (Docket No. 112) are DENIED.  It is further

ORDERED that the Bertch Defendants' Motion for Summary Judgment (Docket No. 74) and the Duval Defendants' Motion for Summary Judgment (Docket No. 84) are GRANTED.  The Clerk of the Court is directed to close this case forthwith.

DATED   July 28, 2009.

BY THE COURT:

TED STEWART
United States District Judge